# IN THE COURT OF APPEALS OF IOWA

No. 22-0443
Filed March 8, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DARNELL CANE REDMOND,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Sean W. McPartland, Judge.

Darnell Cane Redmond appeals his conviction and sentence for burglary in the third degree. **AFFIRMED IN PART, REVERSED IN PART, SENTENCE VACATED, AND REMANDED FOR FURTHER PROCEEDINGS.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Badding, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BOWER, Chief Judge.**

Darnell Cane Redmond appeals his conviction and sentence for burglary in the third degree. We find substantial evidence supports the jury's verdict. But the district court applied the wrong standard in ruling on the motion for new trial, and we remand for the district court to apply the weight-of-the-evidence standard. In addition, the district court failed to exercise its sentencing discretion, so we vacate the sentence and remand for resentencing consistent with the requirements of Iowa Code section 908.10 (2021).

**I. Background Facts & Proceedings.**

John Krizan rented a storage unit for his belongings; he was the only tenant listed on the rental contract.[1] His aunt watched him pack and label his belongings as Krizan kept a list of every container and item stored in the unit.

On August 29, 2021, Krizan's storage unit was broken into. The storage facility notified law enforcement and Krizan of multiple break-ins to the unit on the evening of August 29 and early August 30.[2] When informed people had been in his unit, Krizan indicated to the facility manager "he was not aware of his unit being accessed. It was supposed to be secured and not accessed at that time." Krizan's aunt itemized the items still in the unit, discovering over 200 items missing.

Law enforcement responding after the first unauthorized entry observed the unit appeared to be locked, but there was a visible gap between the door and concrete. The facility-maintenance technician observed the locking bar that would

---

[1] The rental facility's rental contracts do not list persons authorized to access storage units.

[2] It appeared three separate groups broke into the unit, with no connection to each other. Redmond's group was the second to break into the unit.

secure the unit was bent and would not close properly.[3]  A second break-in to the unit occurred within two hours of the officer leaving after the first reported break-in.  The facility was able to provide law enforcement with surveillance video of the break-ins from a camera located directly above Krizan's unit.

On the security footage, Redmond can be seen entering Krizan's storage unit with Kenny Westbrook and Samantha Miller.[4]  Redmond was not wearing a mask or gloves, and law enforcement identified him by his tattoos.  The trio spent more than twenty minutes moving things in the storage unit, going through what was stored inside, and removing items and placing them in their car.  At one point, Redmond, Westbrook, and Miller removed a couch from the unit before deciding it was too big to fit on the car.  They left the couch outside, several units down and across the driveway, rather than replacing it in the storage unit.  Miller closed the door when they left, and none of the trio made any effort to lock or otherwise secure the unit though items remained inside.

In October, Investigator Rich Dvorsky interviewed Redmond about the burglary.  Initially, Redmond claimed he did not remember going to the storage facility.  After Investigator Dvorsky showed Redmond a picture of him at the storage unit, Redmond said Westbrook told him the unit was his and Westbrook paid him to help move the items to another storage unit.  He said there was a lock on the unit's door, but Westbrook just opened it, and Westbrook decided what they would take.  Redmond claimed he did not look in any of the boxes in the unit.  He

---

[3] The facility-maintenance technician testified he secured the slide lock mechanism, but did not have a replacement padlock with him to install.

[4] The facility manager estimated the time of this second break-in to be around 11:00 p.m.

told Investigator Dvorsky they put the couch back in the garage after they realized it was too heavy to put on the car.

In November 2021, charges were filed against Redmond, Westbrook, and Miller. After a two-day trial in January 2022, a jury convicted Redmond of burglary in the third degree.

Redmond appeals, challenging the sufficiency of the evidence on two elements of burglary. He asserts first that the State failed to prove he did not have permission or authority to break into the storage unit and second that the State failed to prove he broke in with the specific intent to commit a theft. Redmond further asserts the court applied the wrong standard when ruling on his motion for new trial on the ground the verdict was contrary to the weight of evidence. Finally, he asserts his parole officer's failure to notify the sentencing court of his parole status as required in Iowa Code section 908.10 was improper and we should remand for resentencing.

## II. Standard of Review.

We review challenges based on sufficiency of the evidence for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021).

> In conducting that review, we are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence. Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence."

*Id.* (internal citations omitted).

> We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion. However, we review a claim that the district court failed to apply the proper standard in ruling on a motion for new trial for errors at law.

*State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (internal citations omitted).

"We review the district court's sentence for an abuse of discretion." *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016) (citation omitted). "When a sentence is not mandatory, the district court must exercise its discretion . . . ." *Id.* (citation omitted).

**III. Analysis.**

*A. Sufficiency of the Evidence.* To convict Redmond of burglary in the third degree, the jury had to find the State proved the following elements:

> 1. On or about August 29, 2021, the Defendant broke into John Krizan's storage garage.
> 2. The storage unit was an occupied structure as defined in Instruction No. 15.
> 3. The Defendant did not have permission or authority to break into the storage unit.
> 4. The Defendant did so with the specific intent to commit a theft.

Redmond asserts the State failed to prove the third and fourth elements— that he did not have permission or authority to be in Krizan's storage unit or did so with the specific intent to commit a theft.

On the third element, the State presented evidence Krizan was the only name on the unit's lease. Redmond could not have been authorized to be in the unit because Krizan did not give anyone permission to be in the unit. When Redmond went into the unit, the locking mechanism was broken, and he and his friends took no steps to secure the unit after removing items. Viewed in the light

most favorable to the State, there is sufficient evidence for a rational fact finder to determine Redmond did not have permission or authority to break into the storage unit.

Redmond next claims there is no evidence he entered the unit with the specific intent to commit a theft. While he acknowledges Iowa law allows an inference of an intent to commit theft from the act of breaking and entering, Redmond asserts the permissive inference does not apply here because the jury was not instructed on it. In answer, the State asserts the jury is not limited to the inferences set forth in the instructions and needs to be able to draw inferences in cases based on circumstantial evidence, and even without the inference, the trio's behavior was inconsistent with Westbrook's ownership of the property.

"'Specific intent is seldom capable of direct proof.' Therefore, specific intent will often 'be shown by circumstantial evidence and the reasonable inferences drawn from that evidence.'" *State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021) (citations omitted). "[I]ntent to commit theft can 'reasonably be inferred from the evidence of surreptitious entry and other circumstances.'" *Id.* (citation omitted). "[I]t is not necessary that the court instruct the jury upon all inferences arising from the evidence." *State v. Simpson*, 528 N.W.2d 627, 632 (Iowa 1995), *overruled on other grounds by State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002).[5] Rather, the court must be careful to avoid giving instructions "that unduly emphasize[ ] certain aspects of the evidence." *State v. Ambrose*, 861 N.W.2d 550, 561 (Iowa 2015).

---

[5] The jury was instructed, "In considering the evidence, you may make deductions and reach conclusions according to reason and common sense."

The jury was able to weigh Redmond's statements from his interview with Investigator Dvorsky against his behavior on the surveillance video. Redmond claimed to have been paid by Westbrook to help move his property from one storage unit to another. The trio went to the facility at 11:00 p.m., arriving in a sedan with a half-full trunk. When they arrived, Westbrook did not go to open "his" unit and was not upset that "his" unit was unsecured. Redmond entered the unit and spent about twenty minutes rifling through the unit. He and his friends removed a couch and, when it did not fit on Westbrook's car, instead of returning it to the unit they disposed of it down the driveway out of the camera's view. The trio then made no effort to secure the unit as they left—despite items still inside. These are not the actions of the owner of the unit. Reason and common sense would allow the jury to reasonably infer Redmond knew the unit was not Westbrook's and entered the unit with the specific intent to commit a theft.

Considering all the evidence in the light most favorable to the State, the jury's verdict is supported by substantial evidence.

*B. Motion for New Trial.* After trial, Redmond filed a motion in arrest of judgment and motion for new trial contending the verdict was contrary to the weight of the evidence. "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Ary*, 877 N.W.2d at 706 (citation omitted). This standard "requires the district court to consider whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict." *Id.*

Redmond asserts the district court used the wrong standard when it overruled the motion for new trial, instead considering the sufficiency of the

evidence.  The State concedes this point, and the record supports the contention.

When ruling on the motion, the court stated, "I do believe that there was *sufficient*

*evidence* to generate a jury question as to each of the elements of the crimes

charged . . . ."  By considering the sufficiency of the evidence rather than the

weight of the evidence, the court applied the wrong standard in ruling on

Redmond's motion for new trial.

"Appellate review of a district court ruling on a motion for new trial asserting

the verdict was contrary to the weight of the evidence ordinarily does not extend

to 'the underlying question of whether the verdict is against the weight of the

evidence.'"  *Id.* at 707 (citation omitted).  Accordingly, we reverse the district court's

ruling on the motion for new trial and remand to the district court to apply the

weight-of-the-evidence standard.

*C. Sentencing Error.*  At the time he committed the offense, Redmond was

on parole for a felony conviction.  Upon conviction and sentence for a felony, the

offender's parole is "deemed revoked as of the date of the commission of the new

felony offense."  Iowa Code § 908.10(1).  Further, for the new conviction,

> The parole officer shall inform the sentencing judge that the convicted defendant is a parole violator.  The term for which the defendant shall be imprisoned as a parole violator shall be the same as that provided in cases of revocation of parole for violation of the conditions of parole.  The new sentence of imprisonment for conviction of a felony shall be served consecutively with the term imposed for the parole violation, unless a concurrent term of imprisonment is ordered by the court.

*Id.* § 908.10(2).

The presentence investigation report noted Redmond was on parole when

arrested for this offense, and the State highlighted that notation at the sentencing

hearing. The district court also discussed Redmond's parole status. However, when pronouncing sentence, the court made no mention of whether Redmond's sentence would run consecutive or concurrent with his parole revocation.

"When a sentence is not mandatory, the district court must exercise its discretion in determining what sentence to impose." *State v. Millsap*, 704 N.W.2d 426, 433 (Iowa 2005) (citation omitted). The statute expressly gives the district court discretion to choose whether to order the new sentence to run consecutive to or concurrent with the parole revocation. And, if the court chooses to run the terms consecutively, the court must state the reasons for its decision. *Hill*, 878 N.W.2d at 274.

Because the district court did not exercise its discretion when sentencing Redmond, we vacate the sentencing order and remand for resentencing consistent with section 908.10.

**AFFIRMED IN PART, REVERSED IN PART, SENTENCE VACATED, AND REMANDED FOR FURTHER PROCEEDINGS.**